IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

ROZBO, INC., a New Mexico corporation, ROZELLA VAN METER and ROBERT VAN METER,

    Plaintiffs,

v.                                                           No. CIV 98-1317 BB/DJS

PRESIDENT BAKING COMPANY, INC., a foreign corporation,

    Defendant.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court on Defendant's motions [Docs. 39, 31, 48, 44] for summary judgment on Counts I, II, III, VI, VII, and their punitive damage claims. Having reviewed the briefs including attachments submitted by counsel, the Court FINDS the motions as to Counts I, II, and VII are supported and will be GRANTED. Based on the present record, questions of material fact remain as to Counts III, VI, and the claims for punitive damages and the motions as to those Counts will be DENIED.

**Discussion**

**I. Background Facts**

In 1995, Plaintiffs, Rozella and Robert Van Meter, became interested in purchasing a distributing company, Ivie Miller Enterprises, which was active in New Mexico and West Texas. This business was owned by Robert and Janice Meek and distributed the products of Defendant, President Baking Company. Plaintiffs were, however, concerned that Defendant's products would continue to be available if they bought Ivie Miller so they set up a June 20, 1995, meeting with Defendant's representatives, Curtis Owens and Gordon Lowery. There is some dispute as to what was said at that meeting, but on June 29, Mr. Lowery, Defendant's Southwest Director of Sales, wrote Plaintiffs as follows:

> We at President Baking Company look forward to working with you as our Distributor in the New Mexico marketing area. President Baking will continue to sell our branded products to your company - Ivie Miller - based upon the following expectations:
>
> 1) Accounts receivable remain current,
> 2) Continued sales volume and brand share growth in the market that will be mutually agreed upon on an annual basis, and
> 3) You maintain a good working relationship with President Baking management.
>
> President Baking will work with you in growing the brand by:

> 1) Employing Oliver Taylor Brokerage personnel on specific key account calls,
> 2) Mutually working with you on marketing funds for long-range brand development, and
> 3) Offering consistent promotional programs to ensure ongoing product management through your distributor system.
>
> We look forward to a profitable, long-term relationship with each of you and wish you the very best as you begin this new endeavor.

Plaintiffs Van Meter as the sole shareholders of Plaintiff Rozbo, Inc., closed the purchase of the Ivie Miller distributorship on July 24, 1995. On March 30, 1998, Defendant gave Plaintiffs written notice that as of June 29, 1998, it would no longer sell Plaintiffs its products.

## II. Legal Standard

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably

favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motions for summary judgment in light of these standards.

### III. Count I (Contract)

Plaintiffs allege Defendant "had an express contract with Plaintiffs to provide baking products to them so long as they met certain conditions." (Compl. ¶ 17) The "contract" upon which Plaintiffs rely is based entirely on the above quoted letter. However, at his deposition Robert Van Meter testified that Defendant's Mr. Owens expressly told him that Defendant did not enter into contracts with its distributors, and that Defendant would not give Plaintiffs a contract. Further, Mr. Owens testified that there was no discussion concerning how long or for what period of time Defendant would sell its product to Plaintiffs. Indeed, Plaintiffs have admitted there is no term or duration set out

4

in the June letter. Finally, Plaintiffs' attorney testified he was never asked to negotiate or prepare a contract with Defendant.

Nor does the course of conduct during the three years which Defendant provided goods to Plaintiffs support the conclusion the parties viewed the June 20, 1995, letter as a contract. Defendant provided Plaintiffs with goods on a "buy-sell" open account and there was never any discussion or agreement about what the "continued sales volume and brand share growth in the market" referenced in the letter was to be. Mr. Owens testified at his deposition that Plaintiffs' sales did not continue to grow, as "required" by the letter, but their sales actually declined. Although the letter refers to "mutually working with you [Plaintiffs] on marketing funds for long-range brand development," Rozella Van Meter testified that she did not even know what that meant. The letter also refers to "[e]mploying Oliver Taylor Brokerage personnel on specific key account calls," but it is undisputed this promotional relationship ended about a year after Plaintiffs bought the distributorship.

Plaintiffs admit Defendant had the right to change the price of bakery products it sold to Plaintiffs, and in fact it did so on several occasions, without complaint from Plaintiffs. Robert Van Meter testified he could end his

relationship with Defendant whenever he wanted to and Defendant could not require Plaintiffs to sell Defendant's products if Plaintiffs no longer wanted to. Indeed, Plaintiffs admit whatever the letter meant, Plaintiffs had the unfettered right to terminate the relationship at will. Nor do Plaintiffs dispute that they never discussed or agreed upon any minimum term and Defendant's representatives all testified the usual relationship in the cookie distribution business was "at will."

Plaintiffs, however, apparently contend that while they could terminate the relationship at any time, Defendant was bound to supply its products as long as Plaintiffs fulfilled the conditions of the June letter. There are two problems with this argument. First, like other contractual terms, the parties must agree on consideration and it has to be mutual. *Romero v. Earl*, 810 P.2d 808 (N.M. 1991); *Tow v. Miners Mem'l Hosp. Ass'n., Inc.*, 199 F. Supp. 926 (S.D.W. Va. 1961). An agreement that binds one party to perpetual performance but allows the other the power to walk away at will is illusory. *Beverage Distrib., Inc. v. Olympia Brewing Co.*, 440 F.2d 21 (9th Cir. 1971); *Interchange Assoc. v. Interchange, Inc.*, 557 P.2d 357 (Wash. App. 1976).

The second problem with Plaintiffs' reliance on the letter as a contract is that it lacks specificity, especially as to the question now at issue - duration. A court must be able to determine what the parties intended before it can enforce a contract. 1 Joseph M. Perillo, CORBIN ON CONTRACTS § 4,1 (1993). While it is true that ambiguous terms should be submitted to the jury,[1] silence on a subject does not create ambiguity. *Lyon Dev. Co. v. Business Men's Assurance Co. of America*, 76 F.3d 1118 (10th Cir. 1996). Here, there is simply nothing in the letter defining the duration of the agreement[2] and the fact Plaintiffs believe they could terminate it at any time emphasizes this point. *See Southwest Distrib. Co. v. Olympia Brewing Co.*, 565 P.2d 1019 (N.M. 1977) ("order to order" basis even over twenty-eight years creates no contractual obligation to continue to supply product). Summary judgment is appropriate on Count I.

### IV. Count II (Quasi Contract)

In Count II, Plaintiffs seek to recover on the basis that "[i]t would be inequitable to allow Defendant to escape its obligation to provide its baking

---

[1] *Jaeco Pump Co. v. Inject-O-Meter Mfg. Co.*, 467 F.2d 317 (10th Cir. 1972); *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238 (N.M. 1991).

[2] The Illinois Court of Appeals reached the same conclusion on analogous facts in *Kraftco Corp. v. Kolbus*, 274 N.E.2d 153 (Ill. App. 1971).

product to Plaintiffs." (Compl. ¶ 23) Based on the above discussion, it is difficult to determine how it is "inequitable" to permit Defendant to terminate a three-year relationship which Plaintiffs recognize they themselves could terminate at will. Moreover, quasi-contract is typically applied to remediate claims of unjust enrichment. *See, e.g., Hydro Conduit Corp. v. Kemble*, 793 P.2d 855 (N.M. 1990). Plaintiffs have adduced no evidence of either unjust enrichment or an inequitable agreement. Defendant's motion for summary judgment should be granted on Count II.

V. **Count III (Unfair Practices Act)**

In Count III, Plaintiffs allege Defendant has violated the New Mexico Unfair Practices Act, NMSA 1978 § 57-12-1 *et seq.* (1995 Repl. Pamp.). The New Mexico Act is modeled after the Uniform Deceptive Practices Act. *See* § 57-12-1 Comment. Actions under this Act are therefore distinct from breach of contract claims and of a different nature. *Lapierre v. Samco Dev. Corp.*, 406 S.E.2d 646, 650 (N.C. App. 1991).

Plaintiffs met with Mr. Owens and Mr. Lowery of President Baking on June 20, 1995. When asked what would happen if Defendant had to take the

business back, Mr. Owens allegedly replied,[3] "If we have to take it back, we will buy it from you." (Robert Van Meter dep. at 140)

Defendant has the burden of proving the terms of the Unfair Practices Act do not apply to the transaction. *United Roasters, Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041 (E.D.N.C. 1979). Defendant maintains the Unfair Practices Act does not apply because the transaction did not occur "in connection with the sale, lease, rental or loan of goods or services." § 57-12-2D. It argues it did not commit the acts alleged "in the conduct of any trade or commerce." § 57-12-3. *Page & Wirtz Constr. Co. v. Solomon*, 794 P.2d 349, 353 (N.M. 1990) (misrepresentation must occur in the regular course of defendant's trade or commerce). On the surface it would appear the statements attributed to Defendant's representative did occur in the conduct of its trade or commerce since it moves its product almost exclusively through distributors. However, the definition of trade or commerce is quite specific and it "includes the advertising, offering for sale, sale or distribution of any services and any property and any other article, commodity or thing of value, including any trade or commerce directly or indirectly affecting the people of this state." § 57-12-2C. It is

---

[3] Mr. Owens denies the statement and attributes it to the former owner of the Ivie Miller distributorship, Mr. Meek.

Defendant's position that the statements which Plaintiffs attribute to Defendant's representatives were not the "advertising, offering for sale, sale or distribution of any services ... property ... article ... or thing of value."

While there is no New Mexico law directly on point, our Bankruptcy Court denied summary judgment on the trade or commerce argument on analogous facts. The defendants in that case were alleged to have arranged a loan for the Kleins, and represented that no fee would be charged. *In re Klein*, 39 B.R. 20 (Bankr. D.N.M. 1984). When the loan was actually procured, the Kleins alleged they were actually charged a fee and required to transfer stock. The Kleins as Debtors sued under the Unfair Practices Act and defendants filed for summary judgment alleging the loan was an isolated transaction and not in the regular course of trade or commerce. Judge McFeeley recognized the Act must be construed as a whole but found there was evidence which would support an inference "that the complained of practice was in fact in the regular course of the defendants' regular course of trade or commerce." 39 B.R. at 23.

Defendant further argues that the Act only applies to the provision of consumer goods and services and not "to their purchase of a business from someone other than President." (Reply Br. Count III at 2) This is but a

10

variation of the above argument.  In fact, the Uniform Deceptive Trade Practices Act, upon which ours is patterned, is designed to prohibit unfair competition as well as consumer deception.  *Dash v. Wayne*, 700 F. Supp. 1056 (D. Haw. 1988); *Phillips v. Cox*, 632 N.E.2d 668 (Ill. App. 1994).  An isolated transaction can satisfy this requirement.  *Ashlock v. Sunwest Bank of Roswell, N.A.*, 753 P.2d 346 (N.M. 1988), *overruled other grounds, Gonzales v. Sufgidev Corp.*, 899 P.2d 576, 583 (N.M. 1995).  Indeed, courts in other jurisdictions have specifically applied the Uniform Deceptive Trade Practices Act to the bulk sale of a business.  *See, e.g., United Roasters*, 485 F. Supp. at 1041.  Application of the Act appears particularly apropos in this context as the record indicates that while Defendant does not buy and sell distributorships, it moves its products through these channels and is thereby directly involved with, and dependent upon, the distributors and would-be distributors.  (*See* Owens dep. at 39-40; Lowery dep. at 54-56)

Finally, Defendant argues the statements attributed to its employees were not "knowingly made." Under the Act a statement does not have to be made with the intent to deceive, only that the statement was knowingly made and Defendant knew, or should have, the statement was false.  *Russey v. Rankin*, 911 F. Supp. 1449 (D.N.M. 1995); *Richardson Ford Sales, Inc. v. Johnson*, 676 P.2d 1344 (N.M.

App. 1984). Plaintiffs argue that at the time Mr. Owens allegedly made the statement Defendant would buy the business, it was legally free to terminate the distributorship at any time. This does not, however, prevent Defendant from buying the business. Plaintiffs further argue the statement in the letter that Defendant would continue to sell to Plaintiffs if they satisfied certain conditions was knowingly false. This may not be sufficient to reach the jury but on the present record and giving a liberal interpretation to the Act,[4] it is sufficient to withstand a motion for summary judgment.

## VI. Count VI (Fraud - Intentional Misrepresentation)

Defendant argues the misrepresentations alleged - the letter and buy back - were not statements of present facts and any reliance by Plaintiffs was neither reasonable nor legally justifiable. Under New Mexico law, the elements of fraud are (1) a misrepresentation of fact or failure to disclose a material fact where (2) the falsity was known to the maker or where the representation or concealment was reckless, (3) the maker acted with the intent to deceive and to induce the other party to act in reliance, and (4) the other party actually relied on the

---

[4] As remedial legislation its provisions must be liberally construed to accomplish its purposes. *State ex rel. Stratton v. Gurley Motor Co.,* 737 P.2d 1180 (N.M. App. 1987).

12

representation or concealment. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985 (10th Cir. 1999). A prediction can be an actionable misrepresentation to the extent it is a misstatement of the underlying facts. *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500 (10th Cir. 1994).

The present record illustrates Plaintiffs indicated they would not purchase the distributorship without assurances of continuing product availability from Defendant. They were also concerned about the consequences if the relationship was terminated. After receiving the assurances they sought from Defendant, the Van Meters relied upon them, bought the business, and were later terminated by Defendant. This is sufficient to create an issue of material fact. *See Echols v. N.C. Ribble Co.*, 511 P.2d 566 (N.M. App. 1973); *Pattison v. Ford*, 485 P.2d 361 (N.M. App. 1971).

### VII. Count VII (Negligent Misrepresentation)

New Mexico recognizes negligent misrepresentation as a tort. *Vigil v. Rio Grande Ins. of Santa Fe*, 950 P.2d 297 (N.M. App. 1997). Unlike fraud, however, the defending party must have breached a duty of disclosure owed to the injured party. *Ruiz v. Garcia*, 850 P.2d 972 (N.M. 1993). Plaintiffs point to no relationship with Defendant that would give rise to a duty to disclose anything to

Plaintiffs who were purchasing the distributorship not from Defendant but from Ivie Miller. *See Shea v. H.S. Pickrell Co.*, 748 P.2d 980 (N.M. App. 1987). Moreover, as the name implies, the law of negligent misrepresentation is governed by negligence. *Ruiz*, 850 P.2d at 977. Plaintiffs allege Defendant's statements were intentionally misleading and the present record creates no inference Defendant negligently misled Plaintiffs. Either Defendant intended to make good on those alleged promises or it did not, but they were not "negligent." *See Ledbetter v. Webb*, 711 P.2d 874 (N.M. 1985) (same conduct is not both intentional and negligent misrepresentation). The absence of both a duty to disclose and of negligence makes summary judgment appropriate on this claim.

### IX. Punitive Damages

Counts I, II, VI, and VII seek punitive damages while Count III seeks treble damages under the Unfair Practices Act. Obviously, since the Court is granting Defendant's motions as to Counts I, II, and VII, punitive damages are moot as to these claims. That leaves the Unfair Practices Act and fraud claim.

Punitive damages are valid when predicated on an established cause of action. *Espinosa v. Roswell Tower, Inc.*, 910 P.2d 940 (N.M. App. 1995). Punitive damages are an appropriate sanction for common law fraud under New Mexico

law. *Woodworker's Supply*, 170 F.3d at 985. Treble damages are also appropriate for violation of the Unfair Practices Act. *Id.* Punitive damages are appropriate when the plaintiff presents evidence defendant's actions were wilful, fraudulent or in bad faith. *Gonzales v. Surgidev*, 899 P.2d 594 (N.M. 1995). While there is little direct evidence of such a mental state at this point, it is this type of issue on which cumulative evidence allows a jury to infer the requisite malice. *Torres v. El Paso Elec.*, 1999 WL 557255, ___ P.2d ___ (N.M. 1999). It is thus too early in the proceedings to determine whether the record as a whole will support the submission of punitive damages on the remaining counts. *See Romero v. Mervyn's*, 784 P.2d 992 (N.M. 1989); *Newman v. Basin Motor Co.*, 644 P.2d 553 (N.M. App. 1982).

Summary judgment as to the punitive damage claims will be denied.


                                                    **BRUCE D. BLACK**
                                                  **United States District Judge**

**Counsel for Plaintiffs:**

John T. Fitzpatrick, Fitzpatrick & Bolnick, Albuquerque, NM
Marshall C. Aungier, Albuquerque, NM

**Counsel for Defendant:**

Richard D. Yeomans, Richard F. Rowley III, Guebert & Yeomans, Albuquerque, NM